HULDA A. COLE

v.

OBEDIAH S. COLE.

[Decided September 5th, 1918.]

The court may in determining the custody of infant children after divorce award the custody to a stranger if circumstances of weight and importance connected with the welfare of child exist to overbear the strict legal rights of the parents.

On petition, &c.

*Mr. John P. Manning,* for the complainant.

*Mr. Charles M. Mason,* for the defendant and cross-petitioner.

LANE, V. C.

After I had determined that cross-petitioner was entitled to a decree for divorce on the ground of adultery, and had awarded the custody of the infant child, Winifred, to the father (complainant not appearing upon the hearing), application was made to open the proofs, and I heard further testimony bearing upon the permanent custody of the child. The child was brought before me as if upon *habeas corpus,* in aid of the exercise by this court of its general jurisdiction as *parens patriæ.* The father lives with his mother, a widow of upwards of fifty years of age. The child, a girl of five, has been in the custody of an aunt, a sister of the mother, for a considerable space of time. The mother desires that the child should remain with the aunt; the father that she should be given to him, so that she may be brought up by his mother.

For reasons which I announced orally at the conclusion of the hearing, and which I will not reiterate, I reached the conclusion that the welfare of the child required that it should at this time

be left with the aunt. The question was then raised as to the power of the court to award the custody of the child to the aunt, the father being anxious to take it.

The statute provides that after a decree for divorce, the court may make such order touching the care, custody and maintenance of the children as the circumstances of the parties and the nature of the case shall render fit, reasonable and just. Section 25, Divorce act, 2 Comp. Stat. p. 2035. An act concerning infants, section 9 (2 Comp. Stat. p. 2810 § 21) provides that in making an order or decree relative to the custody of children, the rights of both parents in the absence of misconduct shall be held to be equal, and the happiness and welfare of the children shall determine the custody or possession. In Richards v. Collins (1889), 45 N. J. Eq. 283, it was held that while the parents have the strict legal right, the court of chancery may in the exercise of its inherent jurisdiction permanently fix the status of infants, even in disregard of the strict legal rights of parents, where the welfare of the infants requires it.

This case is important because many of the circumstances which induced the court to award the custody of the child to a stranger are present in the instant case. Richards v. Collins has been uniformily cited with approval.

In the matter of Cunningham's Case, 61 N. J. Eq. 454, Vice-Chancellor Stevens refused to award to the mother the custody of a sixteen-year-old child as against the House of the Good Shepherd, although that institution had no legal authority to hold the child. Vice-Chancellor Leaming, in Kapcinski v. Richardson, 94 Atl. Rep. 32, after quoting from Richards v. Collins, supra, said: "It will thus be seen that a child cannot be lawfully regarded as a mere inanimate chattel which must be restored to the lawful owner in all circumstances. Like the parties, the child has rights, and the strict legal rights of the father as such can only be enforced in this court with proper regard of the best interest of the child." Vice-Chancellor Stevenson (In re Flynn, 87 N. J. Eq. 413) quoted from Richards v. Collins (at p. 416).

The considerations which ought to influence the court are referred to in the cases above cited, and in Giffen v. Gascoigne, 60

*N. J. Eq. 256*, and *Titus* v. *McGloskey, 67 N. J. Eq. 709*. Giving all due consideration to the legal right of the parents, and to the rule that that right will be recognized, unless circumstances of weight and importance connected with the welfare of the child exist to overbear it, and that it is not sufficient that greater material benefits will be secured by the child in the custody of a stranger, I am still of the opinion that the custody of the child at this time should be committed to the aunt and will advise an order to that effect. I think that the fact that the mother desires the child left in the custody of the aunt, is entitled to some consideration. Vice-Chancellor Stevens declined to pass upon a similar question because not necessary in *Cunningham's Case*.

The order to be made will provide for the right of visitation by the father and the grandmother at certain intervals, for visits by the child to the father and grandmother, and will direct and enjoin all of the parties hereto, including the father, the grandmother, the aunt and the mother not to take, or permit to be taken, the child, out of the jurisdiction of this court without an order of this court first obtained. The order will be so drafted that a disobedience of it will constitute a crime committed within this state, so that any person guilty may be extradicted, and counsel drawing the order should have regard to the case of *State* v. *Dudley, 89 N. J. Law 42*, and to the form in which the statutes providing for the crime of desertion are drawn. If the record does not show that the aunt is a formal party to the proceedings it should be perfected. This may be done, if not already done, by the award of a writ of *habeas corpus,* directed to her, her return thereto, and traverse by the husband and a consolidation of the divorce case and of the *habeas corpus* proceedings for trial.

Settle decree and order on three days' notice.

The order will also reserve the right to any party to apply for a modification at any time.

In case an appeal is taken, there is to be printed, as a part of this opinion, my oral conclusions after they have been sent to me for correction.